UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRISM DATA TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TOMOCREDIT, INC.,<br><br>Defendant. | Case No.:  24-cv-2300-RSH-MMP<br><br>**ORDER (1) GRANTING IN PART PLAINTIFF'S SECOND MOTION TO ENFORCE SETTLEMENT AGREEMENT, (2) FINDING DEFENDANT IN BREACH OF THE SETTLEMENT AGREEMENT, AND (3) PROVIDING REMEDIES FOR BREACH**<br><br>[ECF No. 63] |

Pending before the Court is a second motion filed by plaintiff Prism Data Technologies, Inc. ("Prism") to enforce its settlement agreement with defendant TomoCredit, Inc. ("Tomo"). ECF No. 63. As set forth below, the Court grants the motion in part, finds Tomo to be in breach of the settlement agreement, and provides remedies for that breach.

**I.      BACKGROUND**

On December 10, 2024, Prism filed this lawsuit against Tomo, alleging unfair competition and infringement of Prism's trademark CASHSCORE. ECF No. 1. On

24-cv-2300-RSH-MMP

February 10, 2025, Tomo filed an answer. ECF No. 6. On April 3, 2025, Tomo filed an amended answer with counterclaims seeking cancellation of Prism's trademark registration and a declaration that the mark is invalid. ECF No. 17. Prism moved to dismiss the counterclaims. ECF No. 21.

The Parties thereafter engaged in extensive settlement discussions before U.S. Magistrate Judge Michelle M. Pettit. On June 2, 2025, Judge Pettit advised by minute order that "[o]n May 23, 2025, the Court held a continued Early Neutral Evaluation (ENE) followed by the delivery of a mediator's proposal that was accepted by all parties by the May 30, 2025 deadline. The Parties are now in the process of finalizing their settlement." ECF No. 28.

On July 30, 2025, Judge Pettit advised that the Parties "have requested a conference regarding disagreement of the settlement terms discussed at the Court's Early Neutral Evaluation." ECF No. 32. Following numerous further conferences, Judge Pettit set a scheduling order for Prism to file a motion to enforce a settlement agreement. ECF No. 40.

On January 16, 2026, Prism filed its first motion to enforce. ECF No. 46. Prism's motion asked the Court to (1) determine that there is a binding settlement agreement; (2) find that Tomo has breached the settlement agreement; and (3) award damages and injunctive relief as a remedy for breach.

On February 26, 2026, the Court granted Prism's motion in part. ECF No. 61. The Court determined that the Parties entered into a binding settlement agreement as of May 30, 2025. *Id.* at 3. The Court directed further briefing on the questions of breach and damages:

> Any Party who seeks a remedy from the Court for breach of the settlement agreement in this case shall file an opening brief by April 1, 2026, addressing, for each theory of breach, precisely what term of the settlement agreement has been breached; how the Court should construe that term; what facts establish breach of that term; and how those facts establish breach. Each theory shall be supported by evidence and relevant California law. The moving Party shall fully address each remedy sought with similar analytic precision, and full evidentiary and legal support.

24-cv-2300-RSH-MMP

> Opposition briefing is due by April 21, 2026. No further briefing will be accepted absent Court order.

*Id.* at 10.

On April 1, 2026, Prism timely filed the present motion to enforce.[1] ECF No. 63. Tomo timely filed a response. ECF No. 64.

## II.    LEGAL STANDARD

A district court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1995). "The construction and enforcement of settlement agreements are governed by principles of [state] law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989).

Under California law, to prevail on a breach of contract claim, a plaintiff must show: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiffs." *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1004 (Ct. App. 2016) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (Ct. App. 1990)).

## III.    ANALYSIS

### A.    Settlement Amount and Interest

The Court begins the analysis of breach with what is perhaps the most concrete term in the settlement agreement: Tomo's agreement to pay Prism the sum of $285,000. Tomo has not disputed Prism's assertions that: (1) Tomo agreed to pay Prism this sum; (2) the amount was due and payable as of May 30, 2025; and (3) to date, Tomo has not paid Prism anything. Tomo is therefore in breach of the settlement agreement. Prism is entitled to receive the $285,000 that Tomo promised but has inexcusably withheld.

---

[1]    The Court refers herein to Prism's motion at ECF No. 63 as its "second" motion to enforce to distinguish it from ECF No. 46, but recognizes that both filings are directed to substantially similar relief.

24-cv-2300-RSH-MMP

Tomo argues that Prism "has not proven breach" and is not entitled to "any damages," because Prism itself "has failed to comply with the settlement by: (1) pursuing and seeking damages for its underlying trademark infringement and counterfeiting claims despite having released those claims in the settlement, and (2) failing to comply with the notice and cure provision." ECF No. 64 at 7. In other words, Tomo finds fault with the manner in which Prism has moved to enforce the settlement agreement, and the relief sought in that motion. But Tomo's arguments have nothing to do with Tomo's own undisputed and unexcused nonpayment. Tomo breached the settlement agreement by failing to make its payment as required, and remains in breach; Prism's motion to enforce, brought over seven months after payment was due, does not somehow entitle Tomo to retain the settlement amount it promised to pay. Prism is entitled to the settlement amount as damages.

Prism also requests interest on the $285,000 settlement amount, based on a 10% statutory rate, accruing from May 30, 2025. ECF No. 63 at 12 (citing Cal. Civ. Proc. Code § 685.010). Tomo does not respond to this request. Tomo is not entitled to profit from its refusal to pay as promised. Accordingly, the Court additionally awards interest on the $285,000 settlement at a 10% annual rate—or $78.02 daily—accruing from May 30, 2025.

## B.   Statutory Damages

Prism also seeks statutory damages under the Lanham Act for acts of trademark infringement post-dating the settlement agreement. ECF No. 63 at 12. However, Prism's motion seeks to enforce a *contract*, namely, the settlement agreement; accordingly, Prism's measure of recovery for any breach is based on contract damages rather than statutory damages under the Lanham Act. The Parties could have included a term in the settlement agreement providing for liquidated damages in the event of breach, or providing for damages under the Lanham Act or some other measure; but they did not do so. The Court

24-cv-2300-RSH-MMP

declines to award statutory damages on Prism's motion.[2] Apart from arguing that Prism is entitled to statutory damages, Prism's motion has not addressed or proven any contractual damages arising from Tomo's use of the mark.

## C.   Attorneys' Fees

Prism also seeks an award of attorneys' fees incurred in seeking to enforce the settlement agreement. *Id.* at 20. However, in California it is a "well-established rule that in the absence of a special statute or a contractual provision for attorney's fees, the prevailing party is not entitled to recover attorney's fees from his opponent." *Olson v. Arnett*, 113 Cal. App. 3d 59, 67 (Ct. App. 1980) (declining to award attorneys' fees in an action brought to enforce a settlement agreement). It is true that "[i]n limited circumstances, it is permissible for plaintiffs to recover attorney's fees as damages," such as in the case of the "tort of another" doctrine, which "allows for the recover of attorney's fees as damages when a plaintiff is forced into litigation with a third party due to the tortious conduct of the defendant." *Mai v. HKT Cal, Inc.*, 66 Cal. App. 5th 504, 512 & n.2 (Ct. App. 2021). But Prism has not shown that any such limited circumstances exist here. Instead, Prism seeks to recover the attorneys' fees it has incurred and is incurring in seeking to enforce a contract—a routine set of circumstances. Again, the Parties could have included a term in the settlement agreement providing for attorneys' fees for the prevailing party in any dispute over breach, but they did not do so. The Court declines to award attorneys' fees as a form of damages for breach of the settlement agreement.

Prism has also failed to persuade the Court that it is entitled to attorneys' fees as a sanction for Tomo's noncompliance with the settlement agreement. Prism relies principally on the district court decision on *Tesoro Refining & Marketing Co. v. California Finest Oil*, No. 12-cv-1312-WVG, 2016 WL 4269517 (S.D. Cal. Aug. 15, 2016). *See* ECF No. 63 at

---

[2]   Tomo's argument that Prism itself breached the settlement agreement by requesting this category of damages, ECF No. 64 at 1, 7, is meritless. The settlement agreement did not release claims for post-agreement conduct.

21, 23. That decision is not binding on this Court, and involves circumstances—including a settlement agreement containing a fee provision, the defendants' failure to comply with two court orders to respond, and the defendants' failure to appear at a hearing as ordered—not present here. *Id.* at *4-5. The Court declines to award attorneys' fees as a sanction at this juncture.

### D.    Specific Performance

Finally, Prism seeks an order of specific performance directing Tomo to cease all use of the CASHSCORE mark and refrain from any future use of the mark. ECF No. 63 at 2, 9-11. "Specific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) plaintiff's legal remedy is inadequate." *Blackburn v. Charnley*, 117 Cal. App. 4th 758, 766 (Ct. App. 2004). Prism contends that each of these requirements is satisfied here. *See* ECF No. 63 at 9-11.

Tomo does not contest that the settlement agreement required Tomo to discontinue and refrain from such uses. Tomo concedes that because the Parties were exchanging draft settlement agreements, "Tomo did not initially undertake the effort to remove the full scope of uses of the terms 'cash score' and 'CashScore' that Prism wanted removed." ECF No. 64 at 5. But Tomo assures the Court that "Tomo has now removed all of its previously identified uses of these terms," and has also "removed any mention of 'Cash Score'" on a new product website. *Id.* at 5. Tomo has not contested any of the requirements for ordering specific performance.

Tomo also notes, however, that "three internet posts mentioning 'CashScore' remain," namely, "social media posts on Tomo CEO Kristy Kim's LinkedIn and Twitter accounts or Ronnie Mou's LinkedIn accounts." ECF No. 64 at 6; *see also* ECF Nos. 63-1 ¶ 6 (Lackman Declaration regarding social media posts), 63-4 (Kristy Kim social media posts downloaded Mar. 31, 2026); 46-7 at 20 (Ronnie Mou social media post downloaded Jan. 16, 2026). Tomo argues that its settlement agreement does not apply to these posts

because neither of these individuals were named as defendants in the case. ECF No. at 64 at 7. This argument is meritless.

The social media posts to which Tomo refers include two posts on a LinkedIn account in the name of "Kristy Kim, CEO at TomoCredit," and one post on an X account in the name of "kristy kim." In each instance, Ms. Kim uses the term "CashScore" to identify and promote Tomo's services. *See* ECF No. 63-4 at 3 ("Follow TomoCredit for more personal stories behind the score … #CashScore …."); *id.* at 5 ("Here is what we established & proved: … Built TomoScore (CashScore) … Six years of performance data (loan performance) to prove the power of TomoScore (CashScore)"); *id.* at 8 ("excited to see how CashScore, driven from cashflow underwriting will benefit millions of immigrants!"). Similarly, in a LinkedIn post by "Ronnie M., COO@TomoCredit," Ms. Mou does the same. ECF No. 46-7 at 20 ("'Tomo Cash Score [] + AI Financial Advisor [] provides simple, intuitive insights and clear actions to help users make better financial and credit decisions … #CashScore").

The persistence of these posts made by Tomo's executives reflects clear breaches of Tomo's promise to take down and discontinue use of the mark. It is "well-established" that "a corporation acts through its agents and employees." *Provost v. Regents of Univ. of Cal.*, 201 Cal. App. 4th 1289, 1296 (Ct. App. 2011). "An agent is anyone who undertakes to transact some business, or manage some affair, for another, by authority of and on account of the latter, and to render an account of such transactions." *Daniels v. Select Portfolio Loan Servicing, Inc.*, 246 Cal. App. 4th 1150, 1171 (Ct. App. 2016) (cleaned up). "The significant test of an agency relationship is the principal's right to control the activities of the agent." *Id.* at 1171-72 (citation omitted). There is no dispute here that Ms. Kim and Ms. Mou, as Chief Executive Officer and Chief Operating Officer of Tomo, are Tomo's agents and employees; and Tomo has not disputed that it has the ability to direct its own executives to remove the references to "CashScore" on their social media pages.

"A principal is liable to third parties for the frauds or other wrongful acts committed by its agent in and as a part of the transaction of the business of the agency." *Id.* (cleaned

7

up). Additionally, "a principal is responsible to third persons for the ordinary contracts and obligations of his agent with third persons made in the course of the business of the agency and within the scope of the agent's powers as such, although made in the name of the agent and not purporting to be other than his own personal obligation or contract." *Id.* at 1178 (citation omitted). The social media posts at issue, on their face, consist of Tomo's executives using the term "CashScore" in promoting the business of Tomo—acting within the scope of their agency relationship as executives.

The fact that Tomo refuses to take down these uses of the mark belies Tomo's argument that Prism failed to comply with a "notice and cure" obligation in the settlement agreement. The problem here was not a lack of notice or a lack of awareness, as these social media posts have been well known to Tomo, but instead was Tomo's decision to withhold payment and the other performance due under the settlement agreement.

The Court concludes that each of the requirements for specific performance is met here. The applicable terms of the settlement agreement are sufficiently definite, the agreement is supported by adequate consideration, Prism is seeking specific performance in accordance with the contract terms, and the settlement agreement provides for mutuality of remedies. In finding that Prism lacks an adequate legal remedy here, the Court notes the difficulty of establishing contractual damages arising from unauthorized use of its mark, and also notes Tomo's argument that no such damages have been established here. ECF No. 64 at 16-18.

Accordingly, the Court orders specific performance of the settlement agreement by Tomo: Tomo must immediately cease all existing uses of the CASHSCORE mark, and must refrain from future uses of the mark. This includes without limitation the use of the mark on the social media pages of Kristy Kim and Ronnie Mou described herein.

## IV.    CONCLUSION

For the foregoing reasons, Prism's second motion to enforce the settlement agreement [ECF No. 63] is **GRANTED** in part.

24-cv-2300-RSH-MMP

1. The Clerk of Court shall enter judgment in favor of plaintiff Prism Data Technologies, Inc., in the amount of $285,000 plus interest accruing from May 30, 2025 at the amount of $78.02 per day.

2. Defendant TomoCredit, Inc. must immediately cease all existing uses of the CASHSCORE mark, and must refrain from future uses of the mark.

3. No later than ***fourteen (14) days*** from the date of this order, Tomo must file with the Court one or more declarations, made under penalty of perjury by persons having personal knowledge, sufficient to establish that all such use has ceased. These declarations must identify with specificity every instance of use of the mark that Tomo has removed in compliance with this order; and must describe with specificity, including as to timing, the steps taken to effectuate and confirm that removal. Failure to timely comply with this order may result in issuance of an order to show cause why Tomo should not be held in contempt.

Prism's motion is in all other respects **DENIED**.

Prism's complaint and Tomo's counterclaims are **DISMISSED** pursuant to the settlement agreement. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: May 29, 2026

_____
Hon. Robert S. Huie
United States District Judge

24-cv-2300-RSH-MMP